**ORIGINAL**

FILED IN CHAMBERS
U.S.D.C. Atlanta

DEC 1 8 2018

JAMES N. HATTEN, Clerk
By: [signature]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | **Criminal Indictment** |
| *v.* | |
| BENJAMIN IBUKUNOLUWA OYE | **No. 1:18-CR-492** |
| AHAMEFULE ASO ODUS | |
| EGALE VEONZELL WOODS, JR. | **UNDER SEAL** |
| PAUL CHINONSO ANYANWU | |
| CHINEDU OBILOM NWAKUDU | |

THE GRAND JURY CHARGES THAT:

## COUNT ONE
**(Money Laundering Conspiracy)**
**(18 U.S.C. § 1956(h))**

1. Beginning on a date unknown to the grand jury, but from at least in or about February 2017, and continuing through at least in or about September 2018, in the Northern District of Georgia, and elsewhere, Defendants

**BENJAMIN IBUKUNOLUWA OYE**

**AHAMEFULE ASO ODUS**

**EGALE VEONZELL WOODS, JR.**

**PAUL CHINONSO ANYANWU and**

**CHINEDU OBILOM NWAKUDU**

1

did knowingly combine, conspire, agree, and have a tacit understanding with one another, and with others known and unknown to the grand jury, to commit an offense against the United States, that is:

(a) to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that said transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity; in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

(b) to knowingly engage and attempt to engage in monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, knowing that such transactions involved criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343; in violation of Title 18, United States Code, Section 1957.

### Background

At all times material to the Indictment:

2. A "business email compromise" (BEC) is a type of computer intrusion that occurs when an employee of a company is fooled into interacting with an email message that appears to be, but is not, legitimate. The bogus email usually contains either an attachment or link to a malicious website. Clicking on either will release malicious software (known as "malware") that subsequently infects the employee's email account and/or computer. Frequently, the malware spreads throughout the company's entire computer network. The malware, once executed, can harvest information, including login credentials, and give the intruding party access to sensitive company information, such as email correspondence.

3. In one common BEC scheme, an intruder monitors incoming and outgoing email messages to determine when a large financial transaction is scheduled to take place. After initial transfer or wiring instructions are conveyed between legitimate parties to the transaction, the intruder sends a phony follow-up email that appears to be coming from the original legitimate sender. This "spoofed" email contains a change of plans, instructing that the money to be wired instead go to a different account—one that is controlled by the intruder, or a conspirator of the intruder, and that is set up for the purpose of receiving and redirecting funds acquired illegally from the BEC scheme.

4. A "romance scam" is a type of online fraud that occurs when individual users of internet dating websites are targeted for fraud by imposters posing as

potential paramours.  The scammers create fake online dating profiles that depict photographs of attractive men and women alongside descriptions of fictitious personas.  The scammers use these fake personas to express strong romantic interest in the targeted users in order to trick them into sending money to the scammers under false pretenses.  The scammers frequently target vulnerable individuals who possess significant financial assets, such as retired widows or widowers.  The scammers spend weeks and months cultivating romantic relationships with the targeted users through online messaging, emails, text messaging, or voice calls, in order to gain their affection and trust.  Eventually the scammers trick the dating website users into sending money through interstate wire transfers to bank accounts controlled by the scammers or their conspirators.

5. In one common romance fraud scheme, the scammers, posing as the fake paramours, provide the targeted users with an elaborate false story about how they are working overseas and in need of money to travel back to the United States.  In other instances, the scammers claim they need funds to complete business deals abroad.  In certain cases, the scammers refer the targeted users to other conspirators posing as business associates of the fake paramours, who then corroborate the elaborate stories told by the fake paramours.

<u>Manner and Means</u>

6. The Defendants, BENJAMIN IBUKUNOLUWA OYE, AHAMEFULE ASO ODUS, EGALE VEONZELL WOODS, JR., PAUL CHINONSO ANYANWU, and

4

CHINEDU OBILOM NWAKUDU ("Defendants"), were all residents of the Atlanta metro area who served as money launderers for conspirators who conducted BEC and romance fraud schemes targeted at companies and individuals across the United States. The conspirators used the following manner and means to accomplish their objectives:

7. The Defendants communicated with one another through in-person meetings, mobile application messaging, social media services, and other means in order to coordinate their activities and work together to launder funds obtained through BEC and romance fraud schemes.

8. The Defendants agreed to and did set up numerous personal and business bank accounts specifically for the purpose of receiving funds acquired from criminal activity, including BEC and romance fraud schemes.

9. The business bank accounts set up by the Defendants were for sham companies that did not have physical premises, earn legitimate income, or pay wages to employees. The Defendants registered the sham companies with the State of Georgia to allow them to open business bank accounts for those companies.

10. When funds obtained through fraud were received into the Defendants' personal and business bank accounts, the Defendants quickly dispersed those illegally obtained funds by making interstate and foreign wire transfers to other bank accounts not associated with the fraud schemes, or by making cash or check withdrawals. By doing so, the Defendants attempted to conceal and did conceal

the source of the funds obtained illegally through the BEC and romance fraud schemes.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS TWO THROUGH FIVE
### (Money Laundering)
### (18 U.S.C. § 1957)

11. The Grand Jury re-alleges and incorporates by reference the factual allegations laid out in Paragraphs 2 through 10 of this Indictment as if fully set forth herein.

**BEC of Victim Company "B.A.M."**

12. "B.A.M." was an asset management company located in Florida.  B.A.M. specialized in investments involving large-scale real estate developments in South Florida.

13. In or around June 2018, the owner of B.A.M. opened an email sent to him by computer hackers and clicked on a link that contained malware.  The malware was able to implant itself on the B.A.M. network because the owner had administrative rights to the network.

14. In or around July 2018, a legitimate client of B.A.M. sent an email to a B.A.M. employee instructing the company to process a wire payment of $200,000 for a down payment on an apartment.  The legitimate wire instructions, however, were intercepted by the hackers and were replaced by bogus wire instructions that directed funds to be placed into an account for a bogus

company called Midnight Blue Music, controlled by Defendant EGALE
VEONZELL WOODS, JR. ("WOODS").

15. On or about July 6, 2018, a wire request was made to transfer $200,000
from the Florida Community Bank account of the legitimate B.A.M. client to a
SunTrust account controlled by Defendant WOODS, account number ending
2572.  On or about July 7, 2018, the wire transfer request was processed.

16. On or about July 7, 2018, shortly after the wire transfer was processed,
Defendant WOODS and Defendant BENJAMIN IBUKUNOLUWA OYE ("OYE")
went to a SunTrust bank branch in the Northern District of Georgia to convert a
portion of the fraudulently obtained $200,000 into cash and into two cashier's
checks.  The two cashier's checks that Defendants WOODS and OYE caused to be
issued from the SunTrust account ending 2572, dated July 9, 2018, were in the
amount of $25,000, made payable to OYE.  Defendants WOODS and OYE also
caused an over-the-counter cash withdrawal of $25,000 to be made to WOODS.

17. On or about July 9, 2018, Defendant WOODS went to a SunTrust bank
branch in the Northern District of Georgia to convert another portion of the
fraudulently obtained $200,000 into another cashier's check.  The cashier's check
that Defendants WOODS caused to be issued from SunTrust account ending
2572, dated July 9, 2018, was in the amount of $25,000, made payable to OYE.

<u>Money Laundering Transactions</u>

18. On or about the dates listed below, in the Northern District of Georgia,
Defendants

7

**BENJAMIN IBUKUNOLUWA OYE and**

**EGALE VEONZELL WOODS, JR**

aided and abetted by one another, and by others known and unknown to the grand jury, did knowingly engage and attempt to engage in the following monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, knowing that such transactions involved criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343:

| Count | Date | Transaction Type | Source Account | Recipient | Amount |
|-------|------|------------------|----------------|-----------|--------|
| 2 | July 7, 2018 | Cash withdrawal | SunTrust account ending 2572 | EGALE WOODS | $25,000 |
| 3 | Check dated July 9, 2018 | Purchase of cashier's check #5532381007 | SunTrust account ending 2572 | BENJAMIN OYE | $25,000 |
| 4 | Check dated July 9, 2018 | Purchase of cashier's check #5532381009 | SunTrust account ending 2572 | BENJAMIN OYE | $25,000 |
| 5 | Check dated July 9, 2018 | Purchase of cashier's check #5532381012 | SunTrust account ending 2572 | BENJAMIN OYE | $25,000 |

All in violation of Title 18, United States Code, Section 1957 and Section 2.

8

## COUNTS SIX THROUGH NINE
### (Money Laundering—Concealment)
### (18 U.S.C. § 1956(a)(1)(B)(i))

19. The Grand Jury re-alleges and incorporates by reference the factual allegations laid out in Paragraphs 2 through 10 of this Indictment as if fully set forth herein.

**BEC of Victim Company "R.S.U."**

20. "R.S.U." was a recycling technology company headquartered in Austria with an office location in the Northern District of Georgia.

21. In or around April 2018, an employee of a construction company sent an email to an R.S.U. employee requesting payment in the amount of $57,000. This was a legitimate request, and the R.S.U. employee responded that the payment would be made via automated clearing house (ACH) electronic funds transfer the following day.

22. On or about the next day, a fraudulent email from an imposter posing as the construction company employee directed the R.S.U. employee to send the $57,000 payment via wire transfer instead. The imposter used an email message that resembled the prior message of the construction company employee.

23. The imposter instructed the R.S.U. employee to wire the $57,000 payment into a SunTrust account controlled by Defendant PAUL CHINONSO ANYANWU ("ANYANWU"), account ending 5454.

24. On or about April 23, 2018, the wire transfer from R.S.U.'s bank account to the account controlled by ANYANWU, account ending 5454, was processed.

9

25. On or about April 23, 2018, shortly after the wire transfer was processed, Defendants ANYANWU and BENJAMIN IBUKUNOLUWA OYE went to a SunTrust bank branch in the Northern District of Georgia to withdraw and disburse the illegally obtained funds from ANYANWU's account ending 5454. Defendants ANYANWU and OYE caused three over-the-counter cash withdrawals to be made to ANYANWU, totaling $20,350. Defendants ANYANWU and OYE also caused a $35,000 wire transfer to be made to a Fifth Third bank account, ending 9347, which was controlled by OYE and Defendant AHAMEFULE ASO ODUS, and was in name of a bogus company called Lizben Trucking.

<u>Money Laundering Transactions</u>

26. On or about the dates listed below, in the Northern District of Georgia, Defendants

**PAUL CHINONSO ANYANWU and**

**BENJAMIN IBUKUNOLUWA OYE**

aided and abetted by one another, and by others known and unknown to the grand jury, did knowingly conduct and attempt to conduct the following financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1349, knowing that such transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity,

and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity:

| Count | Date | Transaction Type | Source Account | Recipient | Amount |
|-------|------|------------------|----------------|-----------|--------|
| 6 | April 23, 2018 | Cash withdrawal | SunTrust account ending 5454 | PAUL ANYANWU | $10,000 |
| 7 | April 23, 2018 | Cash withdrawal | SunTrust account ending 5454 | PAUL ANYANWU | $6,050 |
| 8 | April 23, 2018 | Cash withdrawal | SunTrust account ending 5454 | PAUL ANYANWU | $4,300 |
| 9 | April 23, 2018 | Wire transfer to Fifth Third account ending 9347 | SunTrust account ending 5454 | BENJAMIN OYE and AHAMEFULE ODUS | $35,000 |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and Section 2.

COUNTS TEN AND ELEVEN
(Money Laundering—Concealment)
(18 U.S.C. § 1956(a)(1)(B)(i))

27. The Grand Jury re-alleges and incorporates by reference the factual allegations laid out in Paragraphs 2 through 10 of this Indictment as if fully set forth herein.

**Romance Scam of Individual Victim "C.M."**

28. C.M. was a female individual living in New York who used the online dating website OkCupid.com. OkCupid is an American-based, internationally operating online dating website.

29. In or about November 2017, C.M. met a person through OkCupid who purported to be named "John Maney." Maney told C.M. that he lived in Delmar, New York, but that he had a job that required him to travel internationally often. C.M. received photographs from Maney that showed him to be an attractive white male. C.M. spoke with Maney primarily through email, and occasionally by telephone as well.

30. Maney developed a close online relationship with C.M. Maney eventually told C.M. that he had terminal cancer and would not have much longer to live. Maney told C.M. that he wanted to leave her money after his death. Maney told C.M. that the money he wanted to leave to her was held in offshore bank accounts. Maney told C.M. she would need to work with his lawyer and stockbroker to pay certain fees associated with the release and transfer of Maney's off-shore funds. Maney told C.M. that she needed to pay these fees first before she could receive the money he wanted to leave for her.

31. C.M. eventually agreed to send approximately $70,000 to various bank accounts across the world per Maney's instructions. These payments included two wire transfers to a SunTrust bank account, ending 3250, controlled by Defendant BENJAMIN IBUKUNOLUWA OYE and Defendant AHAMEFULE ASO ODUS ("ODUS"), in the name of a bogus company called Lizben Trucking.

32. On or about April 10, 2018, C.M. caused a $6,500 wire transfer to be sent from her State Employees Federal Credit Union (SEFCU) account to the SunTrust bank account, ending 3250, controlled by Defendants OYE and ODUS.  On April 10, 2018, shortly after that wire transfer was completed, Defendant OYE caused a $6,400 funds transfer to be sent from the Lizben Trucking bank account, SunTrust account ending 3250, to another SunTrust account, ending 9441, controlled by Defendant OYE.

33. On or about April 23, 2018, C.M. caused a $2,800 wire transfer to be sent from her SEFCU account to the SunTrust bank account, ending 3250, controlled by Defendants OYE and ODUS.  On or about April 23, 2018, shortly after that wire transfer was completed, Defendant OYE caused a $2,800 funds transfer to occur from the Lizben Trucking bank account, SunTrust account ending 3250, to a SunTrust account, ending 9441, controlled by Defendant OYE.

<u>Money Laundering Transactions</u>

34. On or about the dates listed below, in the Northern District of Georgia, Defendant

**BENJAMIN IBUKUNOLUWA OYE**

aided and abetted by others known and unknown to the grand jury, did knowingly conduct and attempt to conduct the following financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1349, knowing that such transactions were designed in

13

whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity:

| Count | Date | Transaction Type | Source Account | Recipient | Amount |
|-------|------|------------------|----------------|-----------|--------|
| 10 | April 10, 2018 | Wire transfer to SunTrust account ending 9441 | SunTrust account ending 3250 | BENJAMIN OYE | $6,400 |
| 11 | April 23, 2018 | Wire transfer to SunTrust account ending 9441 | SunTrust account ending 3250 | BENJAMIN OYE | $2,800 |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and Section 2.

COUNTS TWELVE THROUGH FIFTEEN
(Money Laundering)
(18 U.S.C. § 1957)

35. The Grand Jury re-alleges and incorporates by reference the factual allegations laid out in Paragraphs 2 through 10 of this Indictment as if fully set forth herein.

14

**BEC of Victim Company "O.P.L."**

36. "O.P.L." was an occupational health company with an office located in Kansas.

37. In or around January 2018, an employee of O.P.L received an email appearing to be from the CEO of a company with which O.P.L. regularly did business. The person purporting to be the CEO, who was actually an imposter, requested a payment of $78,190.35. The payment request appeared to be legitimate to the O.P.L. employee that received it.

38. The imposter instructed the O.P.L. employee to wire $78,190.35 into a Chase bank account, ending 7511, controlled by Defendant BENJAMIN IBUKUNOLUWA OYE, in the name of a bogus company called Lizben Trucking.

39. On or about January 18, 2018, a $75,000 wire transfer was processed from Lizben Trucking's Chase bank account, ending 7511, to Lizben Trucking's SunTrust bank account, ending 3250, controlled by Defendant OYE.

40. On or about January 18, 2018, shortly after that wire transfer was processed, Defendant OYE went to a SunTrust bank branch in the Northern District of Georgia to withdraw and disburse the illegally obtained funds from the account ending 3250. Defendant OYE conducted an over-the-counter withdrawal via cashier's check in the amount of $35,000, made payable to "Kwame Martins" for a "Truck Purchase."

41. On January 19, 2018, Defendants OYE and ODUS went to a SunTrust bank branch in the Northern District of Georgia to again withdraw and disburse illegally obtained funds from the account ending 3250. Defendant OYE was

working as a teller for the SunTrust bank branch at the time.  Defendants OYE and ODUS conducted over-the-counter cash withdrawals in the amounts of $11,000 and $20,000.  After receiving the cash withdrawals, Defendant OYE immediately deposited the $11,000 cash into a SunTrust account, ending 5600, controlled by ODUS.

<u>Money Laundering Transactions</u>

42. On or about the dates listed below, in the Northern District of Georgia, Defendants

**BENJAMIN IBUKUNOLUWA OYE and**

**AHAMEFULE ASO ODUS**

aided and abetted by one another, and by others known and unknown to the grand jury, did knowingly engage and attempt to engage in the following monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, knowing that such transactions involved criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343:

| Count | Date | Transaction Type | Account | Recipient | Amount |
|-------|------|------------------|---------|-----------|--------|
| 12 | January 18, 2018 | Purchase of cashier's check #5531006726 | From SunTrust account ending 3250 | "Kwame Martins" | $35,000 |
| 13 | January 19, 2018 | Cash withdrawal | From SunTrust account ending 3250 | BENJAMIN OYE | $11,000 |
| 14 | January 19, 2018 | Cash withdrawal | From SunTrust account ending 3250 | BENJAMIN OYE | $20,000 |
| 15 | January 19, 2018 | Cash deposit | To SunTrust account ending 5600 | AHAMEFULE ODUS | $11,000 |

All in violation of Title 18, United States Code, Section 1957 and Section 2.

## COUNTS SIXTEEN AND SEVENTEEN
### (Money Laundering)
### (18 U.S.C. § 1957)

43. The Grand Jury re-alleges and incorporates by reference the factual allegations laid out in Paragraphs 2 through 10 of this Indictment as if fully set forth herein.

**BEC of Victim Company "B.C.L."**

44. "B.C.L." was a cosmetics company headquartered in California that sold its products at retail stores throughout the United States.

45. On or about July 26, 2018, the B.C.L. accounts payable department received an email message that appeared to be from an employee of a vendor company with whom B.C.L. regularly conducted business, but which was

17

actually from an imposter.  The imposter's email asked B.C.L. to take note of updated banking account information for the vendor, and included a "Vendor Wire Authorization Form" to be completed and returned to the vendor.  B.C.L. complied with the imposter's request.

46. Shortly thereafter, B.C.L.'s accounts payable department received an inquiry from the vendor referencing an outstanding invoice of $46,450.85. B.C.L.'s accounts payable supervisor approved the payment.  When the payment was sent it went to the imposter's bank account instead of the vendor's.

47. On or about July 26, 2018, as a result of the BEC scheme, a $46,450.85 wire transfer was made from a B.C.L. bank account to a SunTrust bank account, ending 3109, controlled by Defendant CHINEDU OBILOM NWAKUDU ("NWAKUDU").  The $46,450.85 wire transfer was made under false and fraudulent pretenses.

48. On or about July 27, 2018, shortly after that wire transfer was processed, Defendant NWAKUDU went to a SunTrust bank branch in the Northern District of Georgia to withdraw and disburse the illegally obtained funds from NWAKUDU's account ending 3109.  Defendant NWAKUDU purchased two cashier's checks from this account.  The first cashier's check was in the amount of $20,450, and was made payable to U.O., an unindicted co-conspirator.  The second cashier's check was in the amount of $22,230, and was made payable to J.O., another unindicted co-conspirator.

## Money Laundering Transactions

49. On or about the dates listed below, in the Northern District of Georgia,

Defendant

### CHINEDU OBILOM NWAKUDU

aided and abetted by others known and unknown to the grand jury, did

knowingly engage and attempt to engage in the following monetary transactions

by, through, and to a financial institution, affecting interstate and foreign

commerce, knowing that such transactions involved criminally derived property

of a value greater than $10,000, such property having been derived from a

specified unlawful activity, that is, wire fraud, in violation of Title 18, United

States Code, Section 1343:

| Count | Date | Transaction Type | Source Account | Recipient | Amount |
|-------|------|------------------|----------------|-----------|--------|
| 16 | July 27, 2018 | Purchase of cashier's check #5531685987 | SunTrust account ending 3109 | Unindicted co-conspirator U.O. | $20,450 |
| 17 | July 27, 2018 | Purchase of cashier's check #5531685988 | SunTrust account ending 3109 | Unindicted co-conspirator J.O. | $22,230 |

All in violation of Title 18, United States Code, Section 1957 and Section 2.

## COUNTS EIGHTEEN AND NINETEEN
## (Money Laundering)
## (18 U.S.C. § 1957)

50. The Grand Jury re-alleges and incorporates by reference the factual allegations laid out in Paragraphs 2 through 10 of this Indictment as if fully set forth herein.

**BEC of Victim Company "B.F.E."**

51. "B.F.E." was a family amusement provider based in Texas with locations in several other states.

52. On or about August 1, 2018, a B.F.E. employee received an email message that appeared to be from a vendor with whom B.F.E. regularly did business, but which was actually from an imposter.  In the email, the imposter provided B.F.E. with new bank account information for the vendor and requested a $77,195 payment for equipment rental services.

53. On or about August 2, 2018, as a result of the BEC scheme, wire transfers for $75,675 and $1,520 were made from a B.F.E. bank account to a SunTrust bank account, ending 3109, controlled by Defendant CHINEDU OBILOM NWAKUDU ("NWAKUDU").  Both wire transfers were made under false and fraudulent pretenses.

54. On or about August 3, 2018, shortly after that wire transfer was processed, Defendant NWAKUDU went to a SunTrust bank branch in the Northern District of Georgia to withdraw and disburse the illegally obtained funds from NWAKUDU's account ending 3109.  Defendant NWAKUDU purchased two

cashier's checks from this account.  The first cashier's check was in the amount of $36,000 and was made payable to Defendant BENJAMIN IBUKUNOLUWA OYE.  The second cashier's check was in the amount of $37,500, and was made payable to M.K., an unindicted co-conspirator.

Money Laundering Transactions

55. On or about the dates listed below, in the Northern District of Georgia, Defendant

<strong>CHINEDU OBILOM NWAKUDU and</strong>

<strong>BENJAMIN IBUKUNOLUWA OYE</strong>

aided and abetted by one another, and others known and unknown to the grand jury, did knowingly engage and attempt to engage in the following monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, knowing that such transactions involved criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343:

| Count | Date | Transaction Type | Source Account | Recipient | Amount |
|-------|------|------------------|----------------|-----------|--------|
| 18 | August 3, 2018 | Purchase of cashier's check #5532389513 | SunTrust account ending 3109 | BENJAMIN OYE | $36,000 |
| 19 | August 3, 2018 | Purchase of cashier's check #5532389512 | SunTrust account ending 3109 | Unindicted co-conspirator M.K. | $37,500 |

All in violation of Title 18, United States Code, Section 1957 and Section 2.

FORFEITURE PROVISION

56. Upon conviction of one or more of the offenses alleged in this Indictment, Defendants

**BENJAMIN IBUKUNOLUWA OYE**

**AHAMEFULE ASO ODUS**

**EGALE VEONZELL WOODS, JR.**

**PAUL CHINONSO ANYANWU and**

**CHINEDU OBILOM NWAKUDU**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

> MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Indictment.

57. If any of the above-described forfeitable property, as a result of any act or omission of the Defendants:

> a.  cannot be located upon the exercise of due diligence;
>
> b.  has been transferred or sold to, or deposited with, a third party;
>
> c.  has been placed beyond the jurisdiction of the court;
>
> d.  has been substantially diminished in value; or

22

    e.  has been commingled with other property which cannot be divided
      without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code,

Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1)

and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other

property of said defendant up to the value of the forfeitable property described

above.

A _____ BILL

_____
FOREPERSON

BYUNG J. PAK
*United States Attorney*

JOHN S. GHOSE
*Assistant United States Attorney*
Georgia Bar No. 446568
600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

23